FORBRIGER & CO. *v.* UNITED STATES (No. 2334)[1]

1. RES ADJUDICATA—EVIDENCE, RELEVANCY—REMISSION OF ADDITIONAL DUTY—
FORFEITURE.

    The remission by the Secretary of the Treasury, under section 618, Tariff
Act of 1922, of the forfeiture incurred under section 489 for undervaluation in
entry, is not *res adjudicata* of fraud at the hearing, under section 489, by the
Board of United States General Appraisers of a petition for remission of the
additional duty imposed for the undervaluation.   The decision is not relevant.

2. REMISSION OF ADDITIONAL DUTY—SUFFICIENCY OF EVIDENCE.

    Where merchandise, undervalued by more than 100 per centum, was purchased
in July and shipped in November, with the evidence showing changes in the
price and no effort to find the value at the time of entry, importer's testimony
being contradictory and confusing, the denial by the Board of United States
General Appraisers of the petition for remission of additional duty imposed for
undervaluation under section 489, Tariff Act of 1922, is affirmed.

United States Court of Customs Appeals, February 25, 1926

APPEAL from Board of United States General Appraisers, Abstract 46308

[Affirmed.]

*Allan R. Brown* for appellants.
*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General
(*Samuel M. Richardson*, special attorney, of counsel), for the United States.

[Oral argument December 14, 1925, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General
Appraisers denying the petition of the appellants for remission of
additional duties. Merchandise, consisting of plaster of Paris
clocks, was purchased in Germany by Paul Forbriger, a member of
the importing firm, on July 7, 1922, at an agreed price of 95 marks.
It was exported some time during the month of November of that
year.

At the time of shipment the vendor advanced the price 30 per centum
over the contract price, making the invoice value 123.50 marks each.
The merchandise was entered at the invoice value, the price actually
paid by the appellants.   The final appraised value of the merchandise
exceeded the entered value by more than 100 per centum.

It was alleged in the petition filed by the appellants in the court
below that the merchandise was entered for duty at the price actually
paid by the appellants, and that the entry of the merchandise at a
less value than that returned on final appraisement was without any
intention to defraud the revenue of the United States or to conceal

---

[1] T. D. 41435.

or to misrepresent the facts of the case or to deceive the appraiser. The petition was filed in accordance with the provisions of section 489 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 489. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

On the trial before the Board of General Appraisers, the witness, Paul Forbriger, a member of the importing firm, testified substantially as follows: That there was no foreign market for the articles in question, "except that these goods are made and delivered in baskets, six or eight in a basket and carried right to the stores"; that the merchandise was purchased on July 7, 1922, at a unit price of 95 marks; that it was exported some time in November of that year; that the vendor made an advance of 30 per centum in the invoice over the contract price, which was paid by the importers; that the witness was in Germany until October 2, 1922; that, on the day of the purchase of the merchandise involved in this case, the witness purchased like merchandise of another "maker" at 85 marks; that the last-mentioned merchandise was exported 19 days prior to the exportation of the merchandise involved in this case; that an advance of 20 per centum was made in the invoice by the vendor of that merchandise, which was paid by the importers; that, prior to the entry of the first shipment, the importers consulted with the examiner and were advised by him to make entry at the price actually paid, viz, 85 marks plus 20 per centum; that importers made entry accordingly, and the entered value was approved by the appraiser; that the importers did not consult with any customs officer regarding the value of the merchandise involved in this case, because of the acceptance by the appraiser of the value stated in the previous entry, and, as the price was higher for the merchandise contained in the second

shipment than that contained in the first, the importers "supposed" that the value stated in the invoice was the correct value. The witness further testified as follows:

Q. Did you have any information that this merchandise was selling for any different price than that you paid at the time you made the entry?—A. There was no difference.

Q. In entering them as you did, did you have any intention of passing the goods through the customhouse without the payment of what you believed to be the proper duties?—A. I don't get that. No; I did not.

Q. Did you conceal anything from the appraiser?—A. I did not.

Q. Did you make any misstatements to him concerning the values?—A. I did not.

\*          \*.          \*          \*          \*          \*          \*

By General Appraiser McCLELLAND:

Q. You purchased them in July and they were shipped in November?—A. Yes, sir.

Q. Did you do anything before making the entry to find out whether the price of such goods was the same in November as it was in July?—A. The price was still the same.

Q. What did you do?—A. I knew it. I knew what the goods were. I can buy them to-day.

Q. I am asking you what you did about this yourself, whether the price in November was the same as it was in July?—A. In the first place, we had an invoice of the very same thing which Mr. Strauss passed before we made the entry, he passed the goods at 85 marks plus 20 per centum; and this entry in question here was entered 19 days later at 95 marks plus 30 per centum.

Q. You mean to say the examiner passed the same kind of goods 19 days before at a lower price?—A. Correct; at a lower price, 85 marks.

Q. Were they precisely the same?—A. The same exactly.

Q. Did you consult the examiner as to how to make your entry?—A. Always do.

Q. Did you do that in this case?—A. Also in this case.

Q. What did he say?—A. He said if that is the price you paid then go ahead and enter it.

Q. And subsequently he raised it?—A. Yes; he raised the next one, which I can not understand.

\*          \*          \*          \*          \*          \*          \*

By General Appraiser BROWN:

Q. What made you say he said to enter at that price?—A. The other one, the very same goods I entered only three weeks before that at less money, and we supposed the price we entered this at was correct because it was a higher price.

\*          \*          \*          \*          \*          \*          \*

By Mr. KLINGAMAN:

Q. Why didn't you call for a reappraisement?—A. In the first place, we entered the very same goods 19 days before which came from another *factory* for less money, and we did not appeal for reappraisement *because we wanted the goods to go through, because it is the right price. In fact I can buy them to-day for that, and besides, I asked the examiner, Mr. Strauss, and he said that was all right. The amount was very small, and there was 80 per cent breakage.*

General Appraiser McCLELLAND. It would have been easy to call for a reappraisement?

WITNESS. *Yes; but you see I was out of town then.*

(Italics ours.)

One other witness testified for the appellants, but his testimony does not give us any information as to the important issues in the case.

As the final appraised value of the merchandise exceeded the value declared in the entry by more than 100 per centum, the entry, according to the provisions of section 489, *supra*, was presumptively fraudulent and the collector was required by these provisions to seize the merchandise and to proceed in regard thereto as in the case of forfeiture for violation of the customs laws. However, such action by the collector is subject to the provisions of section 618 of the Tariff Act of 1922, which read as follows:

SEC. 618. REMISSION OR MITIGATION OF PENALTIES.—Whenever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this act, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws, and with the Secretary of Commerce if under the navigation laws, before the sale of such vessel, vehicle, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, or the Secretary of Commerce if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. In order to enable him to ascertain the facts, the Secretary of the Treasury may issue a commission to any special agent, collector, member of the Board of United States General Appraisers, or United States commissioner, to take testimony upon such petition: *Provided,* That nothing in this section shall be construed to deprive any person of an award of compensation made before the filing of such petition.

Desiring to be relieved of the *penalties* provided by law for the entry of merchandise at a value less by more than 100 per centum than that returned upon final appraisement, the appellants, pursuant to the provisions of section 618, *supra*, filed a petition with the Secretary of the Treasury. It appears from the statements of counsel in the record that the decision of the Secretary of the Treasury was favorable to the appellants, and that forfeiture of the merchandise was waived. The finding of the Secretary of the Treasury, together with a letter from the department addressed to the appellants, was offered in evidence on the trial below. The purpose of the offer, as stated by counsel, was to establish that the issue of fraud raised by the petition of appellants for remission of *additional duties* had been finally and judicially determined as between the parties in favor of the appellants by the finding and decision of the Secretary of the Treasury made pursuant to the provisions of section 618, *supra;* and that the issue raised by the petition for remission of *additional duties* was, therefore, *res adjudicata.*

This evidence was rejected by the trial court and its ruling in this regard is assigned as error. It is also claimed that the board erred in denying the petition of appellants for remission of additional duties.

In its decision the trial court, in an opinion by McClelland, G. A., said:

* * * When the importation in question arrived no one representing the importer called upon the examiner for information as to the value that should be expressed in the entry. It appears that the merchandise involved was purchased in July, 1922, and not shipped until the following November, yet there is nothing to show that the importers made the slightest effort to find out whether the price alleged to have been paid in July was equal to the market value of such clocks on the later day of exportation.

We are not satisfied that this is a case for relief under the statute and the petition is therefore denied.

We are unable to agree with the claims made by the appellants in this case.

Section 489, *supra*, provides for the remission of *additional duties*. Section 618, *supra*, provides for the remission or "mitigation" of "fines," "penalties," and "forefeitures."

Section 489, *supra*, specifically prescribes that the additional duties therein provided for "shall not be construed to be penal," while section 618, *supra*, provides only for "fines," "penalties," and "forfeitures."

Moreover, while authority is granted unto the Secretary of the Treasury to determine the question as to the remission or mitigation of *fines, penalties,* and *forfeitures,* he has no authority to grant a remission of the additional duties provided for in section 489, *supra*, except in a case of a *manifest clerical error*. The additional duties involved in this case do not result from a manifest clerical error, nor are they included within the provisions of section 618, *supra*, for fines, penalties, or forfeitures. Manifestly, the decision of the Secretary of the Treasury involving the remission or mitigation of fines, penalties, or forfeitures, could not determine the issues before the Board of General Appraisers upon a petition for the remission of additional duties. Nor do we think that his decision or the expressions of opinion therein are relevant to the issues before the board. *United States* v. *American Metal Co. (Ltd.),* 12 Ct. Cust. Appls. 440, T. D. 40612.

It is contended by the appellants that the only finding made by the board in its decision was that the appellants were careless. We do not so interpret the board's decision. It is true that the board found that the appellants made no effort to ascertain the foreign value of the merchandise at the time of exportation. This finding is supported by the evidence. The board also found in substance that the evidence introduced by the appellants in support of their claim of good faith was not satisfactory.

The testimony of the witness Paul Forbriger is contradictory and confusing, and, as he was the only witness who testified concerning the

important features of the case, we are of opinion the appellants failed to establish that the entry of the merchandise at a value less by more than 100 per centum than that returned on final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts or to deceive the appraiser.

We think the board reached the right conclusion, and its judgment is *affirmed.*